UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
SEP 27 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-461-GWU

MAYNARD SHIPMAN
O.B.O. MARY SHIPMAN,                                            PLAINTIFF,


VS.                       **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                                DEFENDANT.


## INTRODUCTION

The plaintiff appeals an administrative decision terminating Child's Supplemental Security Income (SSI) originally awarded in 1998 (Tr. 15). After a remand prompted by the undersigned's Memorandum Opinion, Order and Judgment of October 3, 2004 (Tr. 371-377), the case is again before the Court on cross-motions for summary judgment.

## TERMINATION OF CHILD'S BENEFITS

A new regulation sets out the steps for terminating childhood disability benefits. That section provides:

> (a) *Evaluation of continuing disability, in general.* There is a statutory requirement that, if you are eligible for disability benefits as a disabled child, your continued eligibility for such benefits must be reviewed periodically. . . .

1

> (1) . . . We will determine whether there has been medical improvement[1] in the impairment(s) you had at the time of our most recent favorable determination or decision. . . . If there has been no medical improvement, we will find that your disability continues, unless one of the exceptions to medical improvement described in paragraph (e) or (f) of this section applies.[2]

---

[1]"Medical improvement" is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled . . . . [W]e will disregard minor changes in your signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that your disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s). 20 C.F.R. Section 416.994a(c).. . .For children, our definitions of the terms *symptoms, signs* and *laboratory findings* may include any abnormalities of physical and mental functioning that we used in making our most recent favorable decision [,]. . .the latest final determination or decision involving a consideration of the medical evidence and whether you were disabled or continued to be disabled. 20 C.F.R. Section 416.994a(c)(1), (2).

[2]The first set of exceptions to the need for medical improvement, contained in subsection(e), include situations where: (1) substantial evidence shows that, based on new or improved diagnostic techniques or evaluations, a claimant's impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision. . . In order to be used under this exception, however, the new or improved techniques must have become generally available after the date of the agency's most recent favorable decision. . . .(2) . . .substantial evidence shows on its face that the determination or decision in question should not have been made (e.g., the evidence in a claimant's file, such as pulmonary function study values, was misread, or an adjudicative standard, such as a listing in appendix 1 of subpart P of part 404 of this chapter, was misapplied). . .(3) when, at the time of the prior evaluation, required and material evidence of the severity of your impairment(s) was missing, and the evidence later becomes available upon review, and substantial evidence demonstrates that, had such evidence been present at the time of the prior determination or decision, disability would not have been found. . .(4) substantial evidence that relates to the prior determination or decision refutes the conclusions that were based upon the prior evidence at the time of that determination or decision (e.g., a tumor thought to be malignant was later shown to have actually been benign); substantial evidence must show that, had the new evidence (which relates to the prior determination or decision) been considered at the time of the prior determination or decision, the claim would not have been allowed or continued. 20 C.F.R. Section 416.994a(e).

The second group of exceptions to medical improvement, contained in subsection (f), include situations where (1) a prior determination or decision was fraudulently obtained. . . (2) the claimant failed to cooperate with the agency, as when the agency requested medical or other evidence or to required the claimant go for a physical or mental examination by a certain date, and there was no good cause for the claimant's failure to comply, (3) the agency was unable to locate a claimant (4) . . . If treatment has been prescribed for the claimant which would be expected to improve his/her impairment(s) so that it no longer results in marked and severe functional limitations, the claimant must follow that treatment in order to be paid benefits or show good cause for failing to follow it . . .20 C.F.R. 416.994a(f).

Shipman

20 C.F.R. Section 416.994a(a), (a)(1).

Once medical improvement has been established, <u>and</u> a finding has been made that none of the medical improvement exceptions apply, other considerations come into play before a child's benefits can be terminated. The agency will the consider:

> (1) . . . we will consider whether the impairment(s) that we considered at the time of our most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time. In making this decision, we will consider the current severity of the impairment(s) present and documented at the time of our most recent favorable determination or decision, and the same listing section used to make that determination or decision as it was written at that time, even if it has since been revised or removed from the Listing of Impairments. . . .If that impairment(s) still meets or equals the severity of that listed impairment as it was written at that time, we will find that you are still disabled . . . .
>
> (3) . . . If . . .that impairment(s) no longer meets or equals the severity of the listed impairment that it met or equaled at that time, we will consider whether you are disabled under the rules in §§416.924(c) and (d). In determining whether you are currently disabled, we will consider all impairments you now have, including any you did not have at the time of our most recent favorable determination or decision, or that we did not consider at that time. The steps in determining current disability are summarized as follows:
>
>> (i) *Do you have a severe impairment or combination of impairment?* If there has been medical improvement in your impairment(s), or if one of the first group of exceptions applies, we will determine whether your current impairment(s) is severe, as defined in §416.924(c). If your impairment)s is not severe, we will find that your disability has ended. If your impairment)s is severe, we will then consider whether it meets or medically equals the severity of a listed impairment.

---

3

Shipman

(ii) *Does your impairment(s) meet or medically equal the severity of any impairment listed in appendix 1 or subpart P of part 404 of this chapter?* If your current impairment(s) meets or medically equals the severity of any listed impairment, as described in §§416.925 and 416.926, we will find that your disability continues. If not, we will consider whether it functionally equals the listings.

(iii) *Does your impairment(s) functionally equal the listings?* If your current impairment(s) functionally equals the listings, as described in §416.926a, we will find that your disability continues. If not, we will find that your disability has ended.

20 C.F.R. 416.994a(b).

## DISCUSSION

The administrative law judge (ALJ) found that Shipman had experienced medical improvement in her condition since the 1998 award of benefits based on Listing of Impairment Section 112.05(c).[3] (Tr. 331, 334, 340). As of July, 2001 she had no "marked" or "severe" functional limitations nor did her conditions meet or medically equal any Listing of Impairment section. (Tr. 340). Thus, her eligibility for benefit was held to have ended September 1, 2001. (Tr. 340).

The case had been remanded after a finding by the undersigned that while LOI Section 112.05C no longer applied, other mental health disorders had not been properly evaluated. (Tr. 376-377).

---

[3]This Listing relates to mental retardation and requires an IQ score of 59 or less. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.05C. Medical reviewers indicated that the cognitive domain was the only marked impairment. (Tr. 266).

4

Shipman

Scrutiny of the record reveals that a consultative examiner in July, 2001 assessed the plaintiff's GAF as 48 (Tr. 212) and treating sources in October, 2002 cited a GAF of 50 (Tr. 452), both consistent with at least serious overall symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV). Progress notes from the Cumberland River Comprehensive Center (CRCC) in the period of December, 2002 to January, 2003 indicate that she came to school hungry and tired (Tr. 443) and was depressed (Tr. 438), and in March, 2003 refer to a history of possible malnourishment and aggressive behavior to peers (Tr. 428). Despite the fact that some of this information was explicitly referenced in the remanding Memorandum Opinion, no new medical experts reviewed the evidence and indicated why the GAF scores in particular were to be discounted. Accordingly, substantial evidence does not support a finding to justify termination of benefits prior to March, 2003.

After March, 2003, findings from the treating source radically differ. On March 10, 2003 the plaintiff was said to be very happy with her father, friendly and quite confident. (Tr. 429). The next day a teacher reported to CRCC staff that she was unclear why the plaintiff was applying for disability. (Tr. 510). Her condition was noted to be stable and her affect appropriate in CRCC progress notes thereafter. (Tr. 465, 467, 469, 471, 473, 476, 479, 481, 483, 485, 487, 489, 492, 494, 496, 498, 501, 505). A June, 2004 evaluation from the Center indicated that she was doing well in school academically (Tr. 464) and healthwise (Tr. 463) and a functional assessment listed only "slightly low" as the lowest of her

5

Shipman

functional skills (Tr. 462). Her GAF was listed at 70 (Tr. 453) consistent with mild symptoms as per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.) (DSM-IV). Accordingly, from March 10, 2003 onward, it is clear that the plaintiff had no "marked" or "severe" functional limitations.

Accordingly, the decision finding her disability to have ceased as of July 1, 2001 is reversed to the extent that the plaintiff's disability should be considered to have ended March 10, 2003.

This the __27__ day of September, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE